Henry HALL, Plaintiff

v.

**SPRINGLEAF FINANCIAL SERVICES, INC.,** Defendant.

**Civil Action No. 2:14–cv–143–FKB.**

United States District Court, S.D. Mississippi, Eastern Division.

Signed Nov. 13, 2015.

Michael Farrell, Mike Farrell, PLLC, Jackson, MS, John D. Hafemann, Military Justice Attorneys, PLLC, Beaufort, SC, for Plaintiff.

Emerson Barney Robinson, III, John H. Dollarhide, Butler Snow LLP, Ridgeland, MS, for Defendant.

## ORDER

F. KEITH BALL, United States Magistrate Judge.

This case comes before the Court on the motion for summary judgment filed by Defendant Springleaf Financial Services, Inc. ("Springleaf") [13] and the motion for summary judgment filed by Plaintiff Henry Hall [16]. Having considered the motions, supporting memoranda, responses, and supplemental memoranda and having held a hearing on the motions, the Court finds that Springleaf's summary judgment motion should be granted, and Plaintiff's summary judgment motion should be denied.

## FACTS

The parties do not dispute the facts of this matter. Plaintiff Henry Hall serves as a captain in the Mississippi Army National Guard. Pursuant to ORDERS A-08–213933, dated August 8, 2012, the United States Army ordered Capt. Hall, pursuant to 10 U.S.C. § 12301(d),[1] into federal active duty for a period of 365 days, beginning on October 10, 2012, and ending on October 9, 2013. [32–1] at 2. By ORDERS A–08–213933A01, dated July 26, 2013, the Army amended its previous order and changed Capt. Hall's "END DATE" to September 30, 2013, with a "TOUR LENGTH" of 356 days. *Id.* at 3. Capt. Hall having volunteered for more active duty, the Army issued ORDERS 269–061, dated September 26, 2013, continuing him on Title 10 active duty for a period "[n]ot to exceed 365 days," beginning on October 1, 2013.[1] at 2, ¶ 9; [32–1] at 4. On March 24, 2014, the Army issued ORDERS 083–0006 by which Capt. Hall was "released from active duty" with an "effective date of release from active duty" of July 6, 2014 ("REFRAD [2] order"). [32–1] at 6.

On June 24, 2013, Capt. Hall obtained a consumer loan in the amount of $5,600.24 from Springleaf, bearing an annual percentage rate of 34.37%. Subsequently, Capt. Hall requested that Springleaf reduce the interest rate on his loan to 6% pursuant to the Servicemembers' Civil Relief Act ("SCRA"), 50 U.S.C. Appx. § 527(a)(1). [13–1] at 24, 29. Springleaf responded to Capt. Hall's request, stating that he was not eligible for the interest rate reduction because the SCRA applies

---

**1.** 10 U.S.C. § 12301(d) authorizes members of the National Guard to be ordered to federal active duty.

**2.** The military acronym, "REFRAD," refers to Release From Active Duty.

to "obligations made before entry onto active duty" and he was "on active duty on the date the debt was incurred." [13–1] at 21, 25. Capt. Hall filed this action on September 4, 2014, seeking damages and other relief for Springleaf's alleged violation of the SCRA by refusing to reduce the interest rate on his loan to 6%.

## ANALYSIS

50 U.S.C. Appx. § 527 states in pertinent part:

§ 527. Maximum rate of interest on debts incurred before military service

(a) Interest rate limitation

(1) Limitation to 6 percent

An obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, ... before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent—...

(B) during the period of military service, ....

50 U.S.C. Appx. § 527(a)(1)(B).

50 U.S.C. Appx. § 511(3) defines "period of military service," as follows:

The term "period of military service" means the period *beginning* on the *date* on which a servicemember *enters* military service and *ending* on the *date* on which the servicemember is *released* from military service or dies while in military service.

50 U.S.C. § 511(3) (emphasis added).

The undisputed facts establish that Capt. Hall obtained the Springleaf loan on June 23, 2013, when he was on Title 10 active duty. As quoted above, Section 527 of the SCRA requires that the debt be "incurred by a servicemember, ... *before* the servicemember enters military service." Capt. Hall, however, points to Section 511(3) and the following language in his ORDERS A–08–213933: "Upon completion of this duty, unless sooner released, you will return to your home and upon arrival be released from active duty." [31] at 1; [32–1] at 2. Capt. Hall then postulates that the amended orders, ORDERS A–08–213933A01, released him from active duty when he returned home on September 30, 2013, thereby resulting in two, separate periods of Title 10 military service: one from October 10, 2012 to September 30, 2013, under ORDERS A08–213933A01, and a second from October 1, 2013 to July 6, 2014, under ORDERS 269–061.[3] Capt. Hall argues that since he ob-

3. In an affidavit, Capt. Hall states that he returned home at 6:00 p.m. on September 30, 2013, and claims that he was therefore released from active duty at that time. [31–1]. Springleaf responded that in his affidavit, Capt. Hall misconstrues ORDERS A–08–213933A01. First, Springleaf quotes the Army Regulation (AR), which governs orders releasing a National Guardsman from Title 10 duty, stating that "[t]he effective date of return to ,.. an ARNG Unit ... will be determined by *adding* the authorized *travel time* to the *date* of departure from the transfer ...." [27–1] at 22, AR 600–8–105 at 2–16e. As shown by Springleaf, travel time may be *added* to the end date of the orders, but *not subtracted*, as Capt. Hall attempts to do in his affidavit. Springleaf cites various authorities as to why travel time is added, for example, in order to provide soldiers Federal Tort Claim Act protection while returning from active duty and to provide the soldier's family federal military death gratuity benefits if the soldier dies in transit. *See* [32] at 3–4. Springleaf also points out that the full 356 days of ORDERS A–08–213933A01 did not expire until midnight on September 30, 2013, and Capt. Hall was therefore not released from duty at 6:00 p.m., as claimed in his affidavit. Springleaf further cites authority to support that military orders stated in terms of a "date," instead of "time," run from 0001 hours of the begin date to 0024 hours of the end date, and therefore, there was no break in service on the night of September 30/October 1, 2013, under Capt. Hall's ORDERS A–08–213933A01 and ORDERS 269–061. *Id.*

tained the loan *before* beginning the alleged second Title 10 service period on October 1, 2013, he is entitled to the interest rate reduction under Section 527.

■ In statutory construction cases, the court must "begin with the language of the statute." *Barnhart v. Sigmon Coal Company, Inc.*, 534 U.S. 438, 122 S.Ct. 941, 950, 151 L.Ed.2d 908 (2002). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). "The inquiry ceases 'if the statutory language is unambiguous and the statutory scheme is coherent and consistent.'" *Id.*

■ Applying these principles of statutory construction, the court finds no merit to Capt. Hall's argument. Capt. Hall bases his argument on Section 511(3), which plainly and unambiguously defines the end of a "period of *military service*" by the "date" on which the servicemember is "*released* from *military service*." Although ORDERS A–08–213933A01 released Capt. Hall from active duty *under those orders* on September 30, 2013, they did *not* release him from Title 10 *military service*. By September 30, 2013, ORDERS 269–061 had already been issued, and they immediately continued Capt. Hall on Title 10 service on the next *date*, October 1, 2013. The undisputed facts show that there was

no *date* from October 10, 2012, to July 6, 2014, on which Capt. Hall was not on Title 10 *military service*, and Capt. Hall was not *released* from Title 10 *military service* until the *date* of July 6, 2014, the effective release date in his REFRAD order.[4] *See* [32–1] at 6. Accordingly, Capt. Hall is not entitled to a Section 527 interest rate reduction on his June 24, 2013, loan for his period of military service from October 10, 2012, to July 6, 2014, since he incurred the debt during (and not before) that military service period.[5]

■ The court's holding also comports with the purpose behind Section 527 of the SCRA. Section 527 is intended to afford servicemembers an opportunity to reduce the interest rate on a loan, when leaving their civilian job and entering military service affects their ability to pay it. Section 527(c) makes this purpose clear, as it allows a creditor relief from the Section 527 rate reduction if the servicemember's "ability ... to pay interest upon the [loan] ... at a rate in excess of 6 percent per year is not materially affected by ... the servicemember's military service." 50 U.S.C. Appx. § 527(c). This purpose would not be accomplished by applying the Section 527 reduction to Capt. Hall's June 24, 2013, loan. First, he incurred the debt during the same period of military service for which he seeks the reduction. When Capt. Hall took out the loan, he had already been on active duty for approximate-

---

4. AR 600–8–105 provides the various formats for United States Army orders. Format 523 in AR 600–8–105 is used to release a guardsman from Title 10 active duty. *See* [27–1] at 26, 113, and 122, Figure 9–7, Format 523. The only Format 523 orders for Capt. Hall's period of military service from October 10, 2012, to July 6, 2014, is ORDERS 083–0006, providing an effective date of release from active duty of July 6, 2014. *See* [32–1] at 6.

5. Springleaf asserts as its first and primary argument that even if Capt. Hall had incurred

the debt during one period of military service and sought a Section 527 interest rate reduction for a subsequent period of military service, he still would not have been entitled to the interest rate reduction because the language of the statute requires that the debt be incurred "*before* the servicemember enters military service." 50 U.S.C. Appx. § 527(a)(1)(B) (emphasis added). Since two separate periods of military service do not exist under the undisputed facts of this case, the court does not reach Springleaf's first argument.

ly eight months, and under his orders in effect at the time, he still had almost four more months to serve. Further, *after* Capt. Hall took out the loan, he volunteered to continue on active duty for the remainder of the subject Title 10 military service period. To afford Capt. Hall the interest rate reduction for that period of military service would contravene the intent and purpose of Section 527 of the SCRA.

## CONCLUSION

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the reasons stated above, Springleaf's motion for summary judgment [13] is granted. Capt. Hall's motion for summary judgment [16] is denied, and his claims are dismissed with prejudice.

A separate final judgment will be entered in accordance with Federal Rule of Civil Procedure 58.